**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Gary Edward Daniels,** | ) | **CASE NO. 1:14 CV 2753** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **James C. Mahone, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 24) and plaintiff's Motion for Summary Judgment (Doc. 25). This case is brought by a prisoner alleging excessive force. For the following reasons, defendant's motion is GRANTED and plaintiff's motion is DENIED.

### Facts

*Pro se* plaintiff Gary Edward Daniels filed this action under 42 U.S.C. § 1983 against Lorain Correctional Institution Corrections Officer James C. Mahone, Lorain Correctional Institution Warden Kimberly Clippers, and Ohio Department of Rehabilitation and Correction (ODRC) Director Gary C. Mohr. By prior Memorandum of Opinion and Order, defendants

1

Clippers and Mohr were dismissed.

Plaintiff is an inmate in the custody of the ODRC. At the time of the incident giving rise to this Complaint, plaintiff was incarcerated in Lorain Correctional Institution. Evidence submitted in support of the motions establishes the following facts.[1] Plaintiff's Verified Complaint sets forth his version of the facts. On the morning of October 16, 2014, plaintiff was directed to go to pod 3A to escort new reception inmates to pill call. This was his prison job. When he was performing these duties, he was permitted to move about the prison even when movement was restricted. He wore an orange safety vest to designate to prison staff that he was escorting other inmates. On the morning of the incident, he lined up eight new inmates outside of their pod and was preparing to escort them when Officer Mahone rode up on his bicycle and told them to "hold up a second." Plaintiff saw a construction crew preparing to enter a locked gate adjacent from the group. When the construction crew had entered the gate, plaintiff assumed it was okay for his group to proceed to pill call and began to escort them. Officer Mahone saw the movement and terminated plaintiff's employment on the spot. He demanded that plaintiff hand in his vest. Plaintiff let the vest drop to the ground. But feeling guilty about his action, he picked it up and tossed it to Officer Mahone.

Plaintiff then started to walk back to his cell. He first tried to walk in front of Officer Mahone to enter through the front entrance but Mahone stopped him and told him to enter through the back entrance. Plaintiff turned to do as he was directed. As he was exiting, Officer Mahone ran up behind him and attempted to grab his arm. Mahone failed to make

---

[1] Defendant's motion is supported by the Use of Force Report and various affidavits. Plaintiff's motion refers to his Verified Complaint which attaches Exhibit A, a statement he prepared in support of a grievance he filed.

2

contact with plaintiff, lost his footing, and fell backward three to five feet.  As plaintiff continued on toward the entrance, Officer Mahone again ran after him, and this time picked him up and forcefully slammed him to the ground on his back.  (Verified Compl.)

A statement plaintiff prepared shortly after the incident, attached to his Verified Complaint, is consistent with the facts stated in the Complaint except that plaintiff states that he "threw" the vest to Mahone.(Doc. 1-1)

Officer Mahone avers the following. On the morning of the incident, Mahone was assigned as Yard Officer in front of Units 3A and 4A.  Plaintiff was assigned the job of Runner which required him to escort inmates from their units to the Medical Department for pill call.  Mahone had previously supervised plaintiff and found him to be argumentative and not attentive to his responsibilities. An HVAC project was in progress in the yard outside Units 3A and 4A.  The contractors and a forklift were moving to their job site.  Due to security concerns, all inmate activity must stop until an all clear to proceed command is given by the Yard and/or Vehicle Escort Officers. Plaintiff was exiting Unit 3A with a group of inmates en route to pill call. Mahone ordered plaintiff to stop and remain at Unit 3A while the forklift was moving across the yard.  Mahone turned his attention to monitor the forklift's movement and when he looked back toward plaintiff he observed that he was proceeding without the announcement of the all clear command.  Mahone moved toward plaintiff, ordered him to stop, and told him he was fired. Plaintiff stopped but when ordered to hand over his vest, dropped it on the ground. He was ordered to pick up the vest and hand it to Mahone. Plaintiff picked it up and threw it instead.  Mahone ordered plaintiff to turn around to be handcuffed but did not comply. Mahone placed his hand on plaintiff's arm and plaintiff

3

pushed him backward, causing Mahone to stumble and fall. Mahone regained his feet and struggled with plaintiff who continued to resist being handcuffed. In the struggle, plaintiff grabbed Mahone around the chest and shoulders. Mahone responded by performing a hip-toss and took plaintiff off his feet and directly to the ground. They both fell. Plaintiff continued to resist. Officer Walter Dawson arrived to assist and both were eventually able to overcome plaintiff's physical resistance and get him handcuffed. Unit Manager Michelle Henry also responded and assisted by pulling up plaintiff's sleeves so that he could be handcuffed. Plaintiff then became compliant. An investigation concluded that the use of force was justified and not excessive. Mahone issued plaintiff a Conduct Report and plaintiff was convicted of two of the three charged violations. (Mahone aff.)

Officer Dawson avers that he was on duty in the yard area between Units 3A and 4A. He observed the orange safety vest strike Mahone in the chest. It was apparent that plaintiff, who was standing close by, threw the vest. Dawson then saw Mahone stumbling backwards away from the inmate and falling. The inmate was still on his feet. Dawson called for assistance and ran to the location. Approaching, he saw the two locked in a struggle and heard Mahone giving verbal commands. He then saw Mahone and the inmate go down to the grass and it was apparent that Mahone had succeeded in deploying a balance displacement technique. As he arrived, Mahone was still struggling to restrain the inmate. Dawson assisted in gaining control of the inmate's right hand while Mahone gained control of the left hand. Unit Manager Henry arrived and assisted so that the handcuffs could be applied. (Dawson aff.)

Unit Manager Henry avers that she was on duty in her office in Unit 4A. She looked

4

out her window as the forklift was moving into the yard.  She saw plaintiff walking with a group of several inmates from Unit 3A towards B-11, and Mahone walking toward plaintiff. Henry returned her attention to her desk.  She then heard a radio call for assistance to that location.  She looked up and saw plaintiff with his arms around Mahone and engaged in a struggle. As the struggle continued, they moved into the grassy area in front of Unit 4A.  She saw them fall to the ground. Henry proceeded to where the struggle was occurring, picking up the orange vest on the way, and assisted Mahone and Dawson in applying handcuffs to plaintiff.  Once the handcuffs were on, plaintiff stopped resisting and was helped to his feet. (Henry aff.)

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 alleging that Mahone used excessive force against him in violation of the Eighth Amendment.  The parties have filed cross motions for summary judgment. As the motions are interrelated, they will be addressed together.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

5

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Initially, to the extent Mahone is sued in his official capacity, the Court agrees with

defendant that dismissal is warranted. A suit against a government official in his official capacity is a suit against the state entity employing him. *Ward v. City of Norfolk,* 2016 WL 402975,- Fed.Appx.- (6th Cir. Feb. 3, 2016) (citations omitted). The ODRC is an entity of the State of Ohio which is immune from suit for monetary relief under the Eleventh Amendment. *Id.*

Next, Mahone asserts he is entitled to qualified immunity on the claim of excessive force in his individual capacity. Under this doctrine, government officials "are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010) (citing *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir.2009)). Thus, in determining the applicability of qualified immunity, a court first asks whether the officer's conduct violated a constitutional right. If no constitutional violation is found, "the inquiry stops, the § 1983 claim fails as a matter of law, and the officers do not need qualified immunity." *Williams v. Sandel*, 2011 WL 2790474 (6th Cir. July 13, 2011) (citations omitted). If a potential constitutional violation is found, the court asks "whether the right was clearly established in light of the specific circumstances of the case." *Id.*

Initially, defendant argues that plaintiff's reliance solely on his Verified Complaint[2] as evidence in support of his motion and in opposition to defendant's motion is insufficient as Rule 56 makes clear that a party may not rely on its pleadings as acceptable material under

---

[2] Plaintiff seems to assert that he desires to attain the declarations of the eight inmates whom he was escorting. However, the non-expert discovery deadline expired on November 1, 2015. Additionally, plaintiff "asks the court for counsel." (Doc. 27 at 2) But, this Court previously denied plaintiff's Motion for Appointment of Counsel. (Doc. 8)

7

the rule. However, the Sixth Circuit continues to recognize that "a verified complaint ... carries the same weight as would an affidavit for the purposes of summary judgment, *El Bey v. Roop,* 530 F.3d 407, 414 (6th Cir.2008), to the extent that it is based on personal knowledge, *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985)." *Mourad v. Homeward Residential, Inc.,* 517 F. Appx. 360, 366 (6th Cir. 2013). See also *Miller v. Jones,* 483 F. Appx. 202, 203 (6th Cir. 2012)(citations omitted) ("[C]ourts should consider the allegations in a *pro se* prisoner's verified complaints (which are effectively affidavits) before entering judgment against him, even if the prisoner fails to cite that evidence in response to a motion for summary judgment.")

Notwithstanding, even accepting the averments of plaintiff's Verified Complaint as true, there is no issue of fact as to an Eighth Amendment violation and defendant is entitled to judgment.

The Sixth Circuit has stated the applicable law with respect to an Eighth Amendment claim:

> The Eighth Amendment prohibits the imposition of cruel and unusual punishments upon prisoners. But not every shove or restraint gives rise to a constitutional violation. On occasion, the maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law. Prison officials nonetheless violate the Eighth Amendment when their offending conduct reflects an unnecessary and wanton infliction of pain. There is an objective component and a subjective component to an Eighth Amendment claim. First, the subjective component focuses on the state of mind of the prison officials. We ask whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Second, the objective component requires the pain inflicted to be sufficiently serious. This component requires a contextual investigation, one that is responsive to contemporary standards of decency. While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant

>injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014) (all internal citations and quotation marks omitted). In *Cordell,* the prisoner's Eighth Amendment claim survived where plaintiff presented evidence that he was being escorted by the prison deputy, handcuffed and restrained in a submission hold, down a prison hall with only correctional officers present. Upon turning his head toward the deputy, plaintiff was slammed head first into a concrete wall and suffered significant injuries. The subjective component of the claim was met where the severity of plaintiff's injuries indicated that it was more likely that the deputy acted with malice. Malice was also more likely considering the amount of force used given the lack of evidence of a threat presented by plaintiff's turn toward the deputy who had plaintiff cuffed and in a submission hold. A reasonable jury could also conclude that the objective component was met where, accepting plaintiff's statements as true, the deputy's use of force was "an entirely unnecessary and disproportionate response to [plaintiff] turning toward the deputy" which resulted in significant injuries. *Id.*

The Sixth Circuit has made clear that where a plaintiff does not allege that he suffered any pain from the incident, he does "not experience more than a *de minimus* use of force and he does not make out an Eighth Amendment violation." *Taylor v. Larson,* 505 Fed. Appx. 475 (6th Cir. 2012) (citing *Hudson v. McMillian,* 503 U.S. 1 (1992)). As noted in *Tuttle v. Carroll County Detention Center,* 500 Fed. Appx. 480 (6th Cir. 2012), the Supreme Court explained in *Wilkins v. Gaddy,* 559 U.S. 34 (2012), that the

>Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided

9

> that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.

In *Richmond v. Settles*, 450 F. Appx. 448, 453 (6th Cir. 2011)(citing *Hudson*), the Sixth Circuit recognized, "Although the injury sustained by the inmate must be more than *de minimis*, it need not be particularly serious in order to sustain an Eighth Amendment claim." In *Richmond,* plaintiff's accident/incident/traumatic injury report, as well as his district court pleadings, showed no more than *de minimus* physical injuries which did not require any medical treatment after his initial examination. Accordingly, there was no Eighth Amendment violation resulting from an incident where a corrections officer allegedly tripped him while being escorted out of a disciplinary hearing. Plaintiff fell and struck his shoulder on the ground and other prison officials battered him with their fists and feet. It was determined that there was no more than a *de minimus* injury. *See also Corsetti v. Tessmer*, 41 F. Appx. 753, 755 (6th Cir. 2002) (citations omitted) ("[C]onsistent with Eighth Amendment jurisprudence, the predicate injury need not be significant, but must be more than *de minimis*.") and *Leary v. Livingston Cty.*, 528 F.3d 438 (6th Cir. 2008) (citations omitted) ("An excessive-force claimant must show something more than *de minimis* force.")

      The Court assumes plaintiff's version of the facts is correct that Mahone allowed him to keep walking but then, with no warning, grabbed plaintiff and eventually slammed him to the ground. This was despite the fact that plaintiff had violated prison policy by giving a group of unrestrained inmates an all-clear command to proceed. Plaintiff had also disregarded Mahone's order to give him the vest by tossing it or throwing it instead. Nevertheless, plaintiff provides no evidence of injury, *de minimus* or otherwise. In fact, the

Verified Complaint does not mention injury except to generally state in the request for damages portion of the Complaint, "Plaintiff's cost in this suit and future care and cost of my injuries of my back and shoulders." (Doc. 1 at 7) Likewise, in the statement he prepared in filing his grievance, plaintiff only states, "I further state Officer Mahone deliberately cause bodily harm." (Doc. 1-1 at 2) The Medical Exam Report, submitted by defendant, shows that plaintiff was examined by a nurse on the day of the incident. The report states the "objective physical findings" as "inmate states pain [left] mid back." Additionally, the nurse's assessment indicates no bruising, skin intact, no redness. No treatment was indicated and plaintiff was released to his housing unit. (Doc. 24-1 at 4) This case is indistinguishable from *Richmond, supra.*

Because plaintiff has no evidence of even a *de minimus* injury, the Eighth Amendment claim fails.

Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment is granted and plaintiff's Motion for Summary Judgment is denied.

IT IS SO ORDERED.

                                                    /s/ Patricia A. Gaughan
                                                    PATRICIA A. GAUGHAN
                                                    United States District Judge

Dated: 4/12/16